UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cr-10036-JES-JEH |
| ) | |
| EUGENE HAYWOOD, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION

Now before the Court are Defendant Flora's Amended First Motion (Doc. 567) in Limine, Defendant Gregory's First Motion (Doc. 587) in Limine, the United States' First Motion (Doc. 595) in Limine, Defendant Haywood's Response (Doc. 617) to Motions in Limine Regarding Fifth Amendment Rights, and the United States' Reply (Doc. 637) thereto. This matter is fully briefed, and this Order follows.

### BACKGROUND

**(1) Defendant Flora's Motion (Doc. 567)**

Paragraph 12(c) of the Third Superseding Indictment alleges:

On July 15, 2013, Eugene Haywood, a.k.a. "Nunu," Mytrez Flora, a.k.a. "Trez," Lloyd Dotson, and deceased Bomb Squad leader, Raheem Wilson, a.k.a. "Boosie," conspired to shoot and murder Tyrann Chester, whom they believed to be supplying drugs to a dealer operating independently of Bomb Squad in Bomb Squad territory.

Doc. 443, at ¶ 12(c). In his Motion, Defendant Flora notes that on July 15, 2013, Peoria Police Department Detectives Curry and Sandoval read Flora his *Miranda* warning at the police department, after which Flora acknowledged he understood his rights and invoked his right to remain silent. Defendants Dotson and Haywood did make statements. Defendant Flora thus

1

moves for an order prohibiting the United States or the codefendants from commenting on his invocation of his Fifth Amendment rights.

**(2) Defendant Gregory's Motion (Doc. 587)**

Paragraph 12(aa) of the Third Superseding Indictment alleges:

On May 9, 2017, Keith Gregory, a.k.a "Kilo," Ezra Johnson, a.k.a. "Lil Wody," Torieuanno White, a.k.a. "T.A.," and other Bomb Squad members conspired to shoot Victim R, an individual believed to be a rival gang member, who was present in a store in Bomb Squad territory.

Doc. 443, at ¶ 12(aa). In his Motion, Defendant Gregory notes that in the days following the alleged incident, Peoria Police Department Detectives Lagaspi and Brecklin read White his *Miranda* warnings at the Peoria Police Department, after which White confirmed he understood his rights and made a statement. Defendants Gregory and Johnson invoked their right to remain silent and did not make statements. Defendant Gregory thus moves for an order prohibiting the United States or the codefendants from commenting on his invocation of his Fifth Amendment rights.

**(3) The United States' Motion (Doc. 595)**

The United States, noting some Defendants intend to comment upon their codefendants' invocation of their constitutional rights, moves for an order prohibiting all parties from making comment, reference, argument, inference, or drawing attention to any Defendant's proper invocation of their rights, including: (1) the right to remain silent in the face of police questioning; (2) the right to an attorney at questioning or otherwise; (3) the right not to testify at trial; and (4) the right not to present evidence at trial. The United States argues Defendants' "assertion that silence or the proper invocation of rights is somehow 'evidence' is flawed for three reasons."

First, the United States argues there is no adverse inference that can be drawn from a defendant's silence following the proper invocation of their right to remain silent, not testify at trial, or not present evidence at trial because a defendant's post-*Miranda* silence is irrelevant—it has no tendency to make a fact more or less probable than it would be without the evidence. *Id*. at 3 (citing Fed. R. Evid. 401; *Doyle v. Ohio*, 426 U.S. 610, 617 (1976) (stating post-*Miranda* silence is "insolubly ambiguous")). Second, the United States argues any evidentiary value to be gained from a defendant invoking his right to remain silent is substantially outweighed by the prejudicial effect admission of such evidence may have. *Id*. at 5 (citing Fed. R. Evid. 403).

Third, the United States argues defendants do not have an absolute right to comment on a codefendant's silence. The United States notes the case relied upon by Defendants, *De Luna v. United States*, 308 F.2d 140, 141 (5th Cir. 1962), was distinguished by the Seventh Circuit in *United States v. Kahn*, 381 F.2d 824, 840 (7th Cir. 1967). Further, in *Kahn*, the court remarked:

> The procedural difficulties and the complication of joint trials arising from the rule suggested by dicta in De Luna are so great that we cannot say there is an absolute right, without reference to the circumstances of defense at trial, for a defendant to comment on the refusal of a co-defendant to testify. We think there must be more to justify the disintegration of a trial, such as a conspiracy trial, in which there is a cohesion of crime alleged, defendants charged, and proof adduced. There must be a showing that real prejudice will result from the defendant's inability to comment. *Hayes v. United States*, 8 Cir., 329 F.2d 209, 221 (1964); cert. den., 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964).

*United States v. Kahn*, 381 F.2d 824, 840 (7th Cir. 1967). Finally, the United States asserts Defendants have not attempted to establish that any Defendant will suffer any prejudice from an inability to comment on a codefendant's invocation of his rights.

**(4) Defendant Haywood's Response (Doc. 617)**

Defendant Haywood first argues the United States lacks standing to vicariously assert the Fifth Amendment rights of the Defendants in this case. Next, Haywood argues without citation, "multiple civil cases have held that post-arrest silence is indeed 'evidence' and an adverse inference can arise therefrom." Third, relying on *De Luna*, Haywood argues counsel is allowed to draw an adverse inference from a codefendant's silence where the defendants have mutually inconsistent theories of defense.

Finally, Haywood asserts he intends "to present the defense that another defendant charged jointly with the killing of Tyrann Chester, Defendant Mytrez Flora, shot and killed Chester, without the express or implied agreement of Haywood or any other, and that Flora was acting on his own." *Id*. at 3. Haywood believes he has "the absolute right to argue the adverse inference" of Defendant Flora's refusal to talk to police after the shooting.

**(5) The United States' Reply (Doc. 637)**

On October 18, 2019, the United States filed a Reply. First, the United States responds to Haywood's standing argument, asserting that as a party to the litigation, it has standing to object to the introduction of evidence offered by an opposing party. *Id*. at 3. Second, the United States argues that while it may be permissible to draw adverse inferences from a defendant's silence in a civil case, the Supreme Court has explicitly drawn a distinction between civil and criminal cases. *Id*. at 4 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976)). Next, the United States responds to the cases cited by Haywood in his Response. *Id*. at 4–7. Finally, the United States notes that even if adverse inference evidence or argument was not prohibited *per se*, such evidence or argument should nevertheless be excluded under Federal Rules of Evidence 401 and 403. *Id*. at 8–9.

## DISCUSSION

**(1) Standing**

Defendant Haywood first claims the United States lacks standing to assert the Fifth Amendment rights of the codefendants. Doc. 617, at 2. While it is true "the Fifth Amendment privilege is a personal privilege," *Couch v. United States*, 409 U.S. 322, 328 (1973), here, Defendants Flora and Gregory have also filed Motions seeking to bar codefendants from commenting on their post-*Miranda* silence. Docs. 567, 587. Thus, while the Court believes the United States, as a party to this litigation, has a sufficiently concrete, particularized interest in preventing trial conduct it believes would result in reversable error, *see generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016), the Court need not decide the question because Defendants Flora and Gregory undoubtedly have standing to raise the issue.

**(2) Mutually Inconsistent Theories of Defense**

Defendant Haywood next asserts counsel is allowed to draw an adverse inference from a codefendant's silence where the Defendants have mutually inconsistent theories of defense. Doc. 617, at 2–3. In support of this argument, Defendant relies on *De Luna v. United States*, 308 F.2d 140, (5th Cir. 1962). In *De Luna*, the Fifth Circuit held that severance is required whenever an attorney seeks to comment on a codefendant's silence.

> The conflicting interests of the two co-defendants in this action have generated a narrow but important question relating to the scope of the privilege against self-incrimination: When one of two defendants jointly tried in a criminal proceeding in a federal court exercises his right not to testify, does the Fifth Amendment protect him from prejudicial comments on his silence made to the jury by an attorney for the co-defendant? Pointing to the fact that the United States attorney was free from blame, the Government argues that the general rule against commenting on the exercise of the privilege is inapplicable to the facts of this case. We reject this contention. In a criminal trial in a federal court an accused has a constitutionally guaranteed right of silence free from prejudicial comments, even when they come only from a co-defendant's attorney. If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-

> defendant's silence, the trial judge's duty is to order that the defendants be tried separately.

*De Luna v. United States*, 308 F.2d 140, 141 (5th Cir. 1962).

Five years after the Fifth Circuit decided *De Luna*, the Seventh Circuit had the opportunity in *Kahn* to address the issue. 381 F.2d 824 (7th Cir. 1967). Citing the concurrence in *De Luna*, the Seventh Circuit stated:

> The procedural difficulties and the complication of joint trials arising from the rule suggested by dicta in De Luna are so great that we cannot say there is an absolute right, without reference to the circumstances of defense at trial, for a defendant to comment on the refusal of a co-defendant to testify. We think there must be more to justify the disintegration of a trial, such as a conspiracy trial, in which there is a cohesion of crime alleged, defendants charged, and proof adduced. There must be a showing that real prejudice will result from the defendant's inability to comment. *Hayes v. United States*, 8 Cir., 329 F.2d 209, 221 (1964); cert. den., 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964).
>
> ***
>
> Thus, it must be concluded from the record that the defense of Sachs and Curran was inconsistent with that of Kahn. The degree of antagonism, however, is not as great as that in De Luna where the defenses were mutually exclusive. There, if one defense were believed, the other could not be. In the instant case, it is not clear that Kahn could not have been found innocent if Sachs and Curran were so found.
>
> It must be noted that there were many witnesses and that a great amount of evidence was brought before the jury. However, the extensive evidence and testimony did not present the jury the dilemma of mutually exclusive defenses, with no evidentiary basis for judgment between them, in which a comment on the failure to testify would indicate which horn of the dilemma should be seized. While we dislike the necessity of weighing the benefit which might accrue to a defendant by his counsel's comment on a co-defendant's refusal to testify, we are not convinced that Sachs and Curran Suffered any prejudice from their inability to do so. We hold that the trial court did not err in refusing to sever for the ground asserted.

*United States v. Kahn*, 381 F.2d 824, 840, 841 (7th Cir. 1967).

*Kahn* thus limited *De Luna*, but the state of the law changed again after the Seventh Circuit, and later the Supreme Court, considered *Zafiro*. *See United States v. Zafiro*, 945 F.2d 881

(7th Cir. 1991), *aff'd*, 506 U.S. 534 (1993). In *Zafiro*, Judge Posner discarded the fleeting distinction between mutually antagonistic defenses and "mere finger-pointing."

> True, a vast number of cases say that a defendant is entitled to a severance when the "defendants present mutually antagonistic defenses" in the sense that "the acceptance of one party's defense precludes the acquittal of the other defendant," *United States v. Keck*, 773 F.2d 759, 765 (7th Cir. 1985) (though *United States v. McPartlin*, 595 F.2d 1321, 1334 (7th Cir. 1979), denies this proposition), but not when the defendants are engaged merely in "finger-pointing." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987); *United States v. Emond*, 935 F.2d 1511, 1514 (7th Cir. 1991). This formulation has become canonical. But we recall Justice Holmes's warning that to rest upon a formula is a slumber that prolonged means death. The fact that it is certain that a crime was committed by one of two defendants is a reason for trying them together, rather than a reason against, to avoid "the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Cf. *United States v. Buljubasic*, *supra*, 808 F.2d at 1263. The analogy of interpleader comes to mind, Fed. R. Civ. P. 22; also such joint-tort cases as *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948), and *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). And as we said earlier we are not clear why the case in which the acceptance of one party's defense precludes the acquittal of the other defendant could not be regarded as a paradigmatic case of finger-pointing. We must dig beneath formulas.

*Zafiro*, 945 F.2d at 885 (7th Cir. 1991). Judge Posner went on to suggest two hypothetical situations where the risk of prejudice may be so great as to require severance.

> As an original matter, persons charged in connection with the same crime should be tried separately only if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about the guilt or innocence of one or more of the defendants. Two situations might fit this bill. The first is that of a *complex* case with *many* defendants some of whom might be only *peripherally* involved in the alleged wrongdoing. The danger is that the bit players may not be able to differentiate themselves in the jurors' minds from the stars. Against that danger must be weighed the interest in trying all members of a conspiracy together so that the jury can get a complete picture and the government can save the expense of conducting multiple trials to break a single ring. This counterweight has invariably prevailed in the appellate cases, e.g., *United States v. Diaz*, 876 F.2d 1344, 1357–59 (7th Cir. 1989); *United States v. Moya–Gomez*, 860 F.2d 706, 754 (7th Cir. 1988); *United States v. L'Allier*, 838 F.2d 234, 241–42 (7th Cir. 1988); *United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985)—we can find no recent reversals on this ground in this circuit, and only a couple in others. *United States v. Engleman*, 648 F.2d 473, 480–81 (8th Cir. 1981); *United States v. Salomon*, 609 F.2d 1172, 1175–77 (5th Cir. 1980). Either appellate courts

have faith that the jury will obey instructions to consider the evidence regarding each defendant separately, or they defer to the district judge's judgment that a severance is not required.

*** 

A severance is more likely to be granted, and rightly so, when the defendants are not alleged to be members of a single conspiracy but instead are more loosely related to one another, for then the economies of a joint trial are fewer. *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985); *United States v. Castro*, 829 F.2d 1038, 1045–46 (11th Cir. 1987). Such cases are rare, however, because different offenders can be joined in a single indictment only "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). That will ordinarily require that they be charged, or chargeable, either as coconspirators or as aiders and abettors of a conspiracy. *United States v. Velasquez*, *supra*, 772 F.2d at 1353.

The second type of case in which a joint trial is likely to throw the jury off the scent is where exculpatory evidence essential to a defendant's case will be unavailable—or highly prejudicial evidence unavoidable—if he is tried with another defendant. For example, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), holds that a limiting instruction is insufficient to dispel the prejudice to a codefendant of being inculpated in a defendant's confession, and in such a case either redaction (*Richardson v. Marsh, supra* ) or severance may be necessary. And there are cases in which a person would refuse to testify for a codefendant in a joint trial for fear of incriminating himself, yet if tried separately and convicted might thereafter be willing to testify and might give testimony exculpating the other defendant. *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979) (per curiam). The danger of course is that all the codefendants will want to be tried last, producing impasse.

However that issue be resolved, mutual antagonism, finger-pointing, and other manifestations or characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance. If it is indeed certain that one and only one of a group of defendants is guilty, the entire group should be tried together, since in separate trials all might be acquitted or all convicted—and in either case there would be a miscarriage of justice.

*United States v. Zafiro*, 945 F.2d at 885–86. Ultimately, the Seventh Circuit found the defendants had not suffered prejudice and affirmed the district court's denial of severance.

The Supreme Court affirmed the judgment of the Seventh Circuit. 506 U.S. 534 (1993). In so holding, the Court rejected the petitioner's request for a bright-line rule mandating

8

severance whenever codefendants have conflicting defenses. *Id*. at 538–39. To the contrary, the Court noted Rule 14 of the Federal Rules of Criminal Procedure "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id*. The Court then opined,

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, *e.g., Tifford v. Wainwright*, 588 F.2d 954 (CA5 1979) (*per curiam* ). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U.S., at 211, 107 S.Ct., at 1709.

*Id*. at 539. The Court ultimately concluded the petitioners failed to articulate any specific instances of prejudice, and thus affirmed the Seventh Circuit's judgment. *Id*. at 539–40.

Although *Kahn* and *Zafiro* addressed mutually antagonistic defenses in the context of severance, the reasoning in those opinions apply with equal weight to the issue presented here. Mutual antagonism is insufficient to require severance because mutual antagonism, standing alone, is not prejudicial. *Zafiro*, 506 U.S. at 539; *see also United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001) ("Even a showing that two defendants have 'mutually antagonistic defenses,'

that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right."); *United States v. Morales*, 655 F.3d 608, 625 (7th Cir. 2011) ("In the end, however, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.") (internal quotations omitted); *United States v. Plato*, 629 F.3d 646, 650–51 (7th Cir. 2010) ("When codefendants blame each other, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice…. Severance is warranted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.")(internal quotations omitted); *United States v. Jackson*, 787 F.3d 1153, 1158 (7th Cir. 2015) (same); *United States v. Morales-Guanill*, No. CRIM. 12-215 DRD, 2014 WL 4983857, at *2 (D.P.R. Oct. 6, 2014), *report and recommendation adopted,* 77 F. Supp. 3d 258 (D.P.R. 2015) ("[I] is difficult to see how the prior rule requiring severance in cases of mutually antagonistic defenses, without more, survived *Zafiro.* Instead, *Zafiro's* plain language indicates that the Seventh Circuit was right and that mutual antagonism is no more inherently prejudicial than finger-pointing."). For the same reasons that mutual antagonism is not a sufficient ground for severance, it is also not a sufficient basis for allowing a defendant to intrude on a codefendant's constitutional rights under the Fifth Amendment.

Here, Defendant Haywood intends to argue that Defendant Flora shot Tyrann Chester, and he is free to do so.[1] However, commenting on a defendant's exercise of his Fifth Amendment

---

[1] The instant Motions address the issue of commenting on a codefendant's silence, and the Court's opinion is thus limited to that issue. The Court therefore does not address other potential constitutional issues that may arise if Haywood wishes to present certain affirmative evidence of Flora's guilt. *See generally Bruton v. United States*, 391 U.S. 123 (1968).

10

right to remain silent or to not testify, "whether by the prosecutor, the court, or a codefendant, is improper[.]" *United States v. Patterson*, 819 F.2d 1495, 1506 (9th Cir. 1987). Moreover, the Court agrees with the United States that such evidence would carry little, if any probative weight, as silence following the proper invocation of one's right to remain silent is "insolubly ambiguous." *Doyle*, 426 U.S. at 617. On the other hand, the prejudice to the codefendant resulting from such evidence or argument would be great; it would essentially penalize him for exercising his constitutional rights. Thus, to the extent such evidence is relevant, the Court would nonetheless exclude the evidence as unfairly prejudicial. *See* Fed. R. Evid. 403.

Lastly, as in *Zafiro*, Defendant Haywood does not identify any specific prejudice he will face if prohibited from commenting on his codefendant's silence. *See Zafiro*, 506 U.S. at 539. And while Haywood makes much ado about evidence he purports implicates Flora as the shooter, the Court notes the overt act charges three of the Defendants with *conspiracy* to shoot and murder Chester, not just the murder itself. Thus, while the evidence at trial may support—and the jury may well believe—that Flora was the shooter, such evidence would not necessarily exculpate Defendant Haywood of conspiring with Flora and Dotson to kill him.

## CONCLUSION

For the reasons set forth above, Defendant Flora's Amended First Motion (Doc. 567) in Limine, Defendant Gregory's First Motion (Doc. 587) in Limine, and the United States' First Motion (Doc. 595) in Limine are GRANTED to the extent that all parties will be prohibited from making comment, reference, argument, inference, or drawing attention to any defendant's proper invocation of their rights, including: 1) the right to remain silent in the face of police questioning; 2) the right to an attorney at questioning or otherwise; 3) the right not to testify at trial; and 4) the right not to present evidence at trial.

Signed on this 21st day of October, 2019.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge