UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 18-cr-10036-JES-JEH |
| EUGENE HAYWOOD, et al., | ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION

Now before the Court is the United States' Motion (Doc. 707) and the Defendant's response (Doc. 723), and the Court having heard argument on the matter, this Order follows. For the reasons set forth below the United States' Motion as to the expert testimony of Dr. Jorja Leap is DENIED in part and GRANTED in part.[1]

### BACKGROUND

The government has charged Defendants with being a part of a criminal enterprise known as the Bomb Squad. The Third Superseding Indictment alleges Defendants are jointly and severally guilty of a RICO conspiracy (Count One) in violation of 18 U.S.C. § 1962(d). It is to this count that Dr. Jorja Leap's testimony is applicable.

The Defense retained Dr. Jorja Leap ("Dr. Leap") and asked her to evaluate whether the group of indicted individuals (hereinafter "Defendants") constitute a gang. Doc. 707-1, at 5. Dr. Leap states she reviewed over 12,000 pages of discovery, focusing on the Reports of Investigation by the Bureau of Alcohol, Tobacco and Firearms, the Peoria Police Department Reports, Facebook social media messages between Defendants, and music videos featuring some

---

[1] The Court ruled orally in open court and this written order follows.

of the Defendants. *Id.* In addition, she conducted or supervised in-person ethnographic, narrative interviews with each Defendant during their pre-trial detention. *Id.* Dr. Leap also compiled research focusing on the general characteristics, qualities, and requisites that identify a group of people as a street gang. *Id.* at 6. As a result, she formed an opinion that Defendants identified as the "Bomb Squad" in the indictment do not constitute a criminal street gang. *Id.* Dr. Leap concludes Defendants do not constitute a gang for many reasons, including the lack of consistent membership with a shared identity, and opines Defendants appear to be a group of individuals who do not maintain relationships with one another in any structured or consistent way. *Id.* at 41.

## **LEGAL STANDARD**

Rule 702 authorizes an expert witness—qualified by their knowledge, skill, experience, training, or education—to present opinion testimony if the testimony will help the trier of fact understand the evidence or determine a fact in issue, as long as the testimony is based on sufficient data, using reliable methods, and the expert has applied the principles reliably to the facts of the case. Fed. R. Evid. 702. Although Rule 702 was updated in 2000, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), continues to be the "gold standard for evaluating the reliability of expert testimony and is essentially codified in the current version of Rule 702." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).

A court examining a *Daubert* challenge is a gatekeeper, not an arbiter of truth: "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). *Daubert* requires the Court to evaluate "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)

2

(emphasis in original); *see also Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). In other words, expert testimony must be presented by a qualified witness, be "grounded in the methods and procedures of science," and "assist the trier of fact to understand or determine a fact in issue." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (quoting *Daubert*, 509 U.S. at 590–91) (alterations omitted). "The party seeking to introduce the expert witness testimony bears the burden of demonstrating that the expert witness testimony satisfies the standard by a preponderance of the evidence." *Id.* at 673.

## DISCUSSION

The Court agrees Dr. Leap qualifies as an expert on the makeup of gangs, gang affiliation, gang activity, gang formation, and the dynamics of and patterns, characteristics, and qualities of street gangs and will be allowed to testify generally to the same. Dr. Leap also addresses the issue of music videos and lack of gangs in the Peoria Public Schools and will be allowed to testify to those topics in her testimony about gangs in general. Dr. Leap will not be allowed to opine specifically on whether these Defendants, who comprise this alleged group called "Bomb Squad," are a gang. This is because she is unable to do so without reliance, in great part, on Defendants' statements made to her during their interviews.

Although Dr. Leap asserts she reviewed discovery, she cites the Defendants' statements throughout the report as the sole support of her opinions. Doc. 707-1 ("[C]o-defendants denied wearing specific clothes or any clothing accessory that displays unifying colors. During interviews, the co-defendants denied the existence of any sort of gang colors.") *Id.* at 27; ("In interviews with the co-defendants, most acknowledged the existence of 'Bomb Squad' as an idea or entity – largely of the past – resulting from the 2012 federal indictment against the group, but not as a currently existing group of people who engage in criminal activity together and identify

with each other.") *Id.* at 29; ("[C]o-defendants do not consistently self-identify as gang members…") *Id.* at 30; ("From interviews it emerged that the co-defendants do not view themselves as part of a gang.") *Id.* at 31; ("[I]n a hypothetical situation that one co-defendant recounted: If an individual from another neighborhood in the South End came into the Harrison Homes … and committed an act of violence against someone in that neighborhood … it would be an issue only between the two individuals involved in the incident.") *Id.* at 32.

Where the only basis for the opinion is inadmissible hearsay, the Court should exclude the testimony. *See United States v. Beavers*, 756 F.3d 1044, 1054-55 (7th Cir. 2014). Rule 802 provides that hearsay is inadmissible outside of certain exceptions. Fed. R. Evid. 802. The general rule against hearsay under Rule 802 would prevent a defendant from calling a friend to the stand to relay an exculpatory statement made by the defendant, in lieu of the defendant testifying himself. *Beavers*, 756 F.3d at 1051. *Beavers* addressed this precise issue:

> [T]he rule against hearsay may burden the defendant's right to testify … since it puts him to the choice of taking the stand (and exposing himself to potentially damaging cross-examination) or losing the chance to get evidence before the jury. That sort of burden is not *impermissible*, however; it is simply part of a larger system in which "[t]he accused does not have an unfettered right to offer testimony that is … inadmissible under standard rules of evidence."

*Id.* quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653 (1988). An expert may not freely relate hearsay to the fact finder. *See United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) (a court must ensure an expert witness is testifying as an expert and not merely a conduit through which hearsay is brought before the jury).

Dr. Leap cites the interviews with Defendants at least eighteen times in her report. Her conclusions about whether Defendants constitute a street gang are based almost entirely on the

4

interviews, which are inadmissible hearsay. Dr. Leap's opinion as to their group is not based on any reliable scientific methodology but relies on the Defendants' self-serving statements.

In addition, Dr. Leap's report makes determinations as to the credibility of witnesses, which is not proper for expert opinion testimony. For instance, in her report she states, "[w]hile there is some indication in the discovery materials that the group alleged to be Bomb Squad had the semblance of a hierarchy, this is dependent on the accounts of confidential informants. In interviews, co-defendants consistently stated that there is no hierarchy or gang-like leadership structure to which they adhered." Doc. 707-1, at 36. Further in the report, she states, "[t]he indictment appears to be based on false assumptions of territorial and interpersonal dynamics that are communicated by cooperating defendants, whose accounts are notoriously unreliable…." *Id.* at 38.

The Seventh Circuit has cautioned that testimony offered by an expert must "actually be expert testimony; the [expert] must apply his expertise in a way that is helpful to the jury." *United States v. Benson*, 941 F.2d 598, 606 (7th Cir. 1991). In *Benson*, an Internal Revenue Agent was called to summarize the government's trial evidence and give his expert opinion as to why that evidence showed the defendant was required to file income tax returns. 941 F.2d at 603. Much of the agent's testimony relied on testimony of other witnesses whose credibility had been vigorously attacked by the defendant. *Id.* at 604. The agent essentially made credibility determinations and told the jury whom to believe. *Id.* "Credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury." *Id.* This does not prevent an expert witness from offering testimony that may lead the jury to disbelieve a witness. *Id.*

5

Dr. Leap's conclusions as to the reliability of confidential informants or cooperating defendants are comparable to *Benson* because the jury is being told whom to believe. 941 F.2d at 604-05. Dr. Leap is not offering special knowledge or skill that may assist the jury in making credibility determinations of other witnesses, but instead she is making those credibility determinations for them. This is improper expert testimony. For these reasons, and the reasons stated on the record, Dr. Leap will not be allowed to testify as to her conclusions that the Defendants, as a whole or in part, are not a street gang.

## CONCLUSION

For the reasons set forth above, the United States' Motion (Doc. 707) is DENIED in part and GRANTED in part.

Signed on this 12th day of December, 2019.

        s/James E. Shadid_____
        James E. Shadid
        United States District Judge